GERBER, J.
 

 The defendant appeals his first-degree murder conviction. He argues that the trial court erred by: (1) denying his motion in limine to prohibit the state from introducing ballistics evidence; (2) overruling his objection to the state’s rebuttal closing argument;, and (3) denying his motion for new trial. On the first two arguments, we affirm. On the third argument, we remand for an evidentiary hearing.
 

 The state presented the following evidence at trial. A woman in her apartment saw a shooting occur across the street. She recognized the shooter as the defendant, whom she knew from the neighborhood. A man in the neighborhood also heard the shots. Less than one minute later, the man saw the defendant walking quickly away from the area where the shooting occurred.
 

 
 *608
 
 Later that day, the defendant arrived at another woman’s apartment. The defendant looked puzzled and different from normal. The defendant asked the woman to hide a gun for him. She said no, but that he should hide the gun under the stairs of her building. She watched as the defendant hid the gun there. She said the gun was distinctive because it had a silver stripe. She also said she had seen the defendant’s cousin with such a gun the night before.
 

 The police apprehended the defendant.
 
 Post-Miranda,
 
 the defendant told the police that, at the time of the shooting, he was driving around town with a friend who lived in an apartment above a laundromat. The police could not locate anyone by that friend’s name and confirmed that there were no apartments above the laundromat. The police located the defendant’s cousin, but the cousin refused to talk to the police.
 

 The police found the gun hidden under the stairs. During ballistics testing, the gun’s hammer broke and had to be replaced. One of the state’s ballistics examiners testified that replacing the broken hammer did not affect the testing. The testing confirmed that the gun was used in the shooting.
 

 The police recovered three fingerprints from the gun. The first print matched the defendant. The second print did not match the defendant. The third print was insufficient for comparison. The police never compared the prints to those of the defendant’s cousin.
 

 The police also took DNA swabs from the gun. The investigating detective testified that, two or three days after the shooting, he submitted the swabs to the DNA lab for testing. He further testified that, two months before the trial, he checked with the lab about the status of the testing. He was told that the lab had not performed the testing yet. He asked about expediting the testing for the trial, and a supervisor told him that the lab could not expedite the testing and that the testing had to progress through the system in the order in which it was received. The detective testified that the lab did not complete the testing before trial.
 

 Before trial, the defendant filed a motion in limine to prohibit the state from introducing the gun and the ballistics testing into evidence. The motion argued that the police’s replacement of the gun’s broken hammer constituted tampering with the evidence. The trial court denied the motion and admitted the evidence at trial.
 

 During closing argument, the defendant contended that the reason why his cousin refused to talk to the police was because his cousin shot the victim. During rebuttal, the state contended that the reason why the defendant’s cousin refused to talk to the police was because the cousin did not want to “tattle” on the defendant. The defendant objected that the state was arguing a fact not in evidence. The trial court overruled the objection.
 

 The jury convicted the defendant as charged. The trial court then sentenced the defendant to life in prison.
 

 The defendant later filed a motion for new trial on the ground of newly discovered evidence pursuant to Florida Rule of Criminal Procedure 3.600(a)(3) (2008). Attached to the motion was an affidavit from the defendant’s investigator. According to the investigator, the DNA lab’s personnel said that they told the detective that all expedite requests had to be in writing, that they never received a written expedite request from the detective, and that an expedited test could have been completed in approximately one week. The trial court denied the motion without holding an evi-dentiary hearing and without making any findings.
 

 
 *609
 
 This appeal followed. The defendant argues that the trial court erred by: (1) denying his motion in limine; (2) overruling his objection to the state’s rebuttal argument; and (3) denying his motion for new trial. We will address each argument in turn.
 

 We review the trial court’s denial of the motion in limine for an abuse of discretion.
 
 See Edwards v. State,
 
 39 So.3d 447, 448 (Fla. 4th DCA 2010) (“The standard of review of a trial court’s ruling on a motion in limine is abuse of discretion.”). We find that the trial court did not abuse its discretion in denying the motion in limine. One of the state’s ballistics examiners testified that replacing the broken hammer of the gun did not affect the testing. No evidence in the record refutes that testimony. Thus, we affirm on this issue.
 

 We review the trial court’s ruling on the objection to the state’s rebuttal argument for an abuse of discretion.
 
 See Wicklow v. State,
 
 43 So.3d 85, 87 (Fla. 4th DCA 2010) (“Improper prosecutorial closing argument is reviewed under an abuse of discretion standard.”). We find that the trial court did not abuse its discretion in overruling the defendant’s objection. The state’s unsupported comment as to the alleged reason why the defendant’s cousin refused to talk to the police was a fair reply to the defendant’s prior unsupported comment that his cousin refused to talk to the police because his cousin committed the murder.
 
 See Johnson v. State,
 
 917 So.2d 226, 228 (Fla. 3d DCA 2005) (prosecutor’s comments during the state’s rebuttal argument, even if erroneous, were a fair reply tailored to respond to defense counsel’s comments during closing argument). While it would have been the better practice for the state to have pointed out to the jury that the defense’s argument was merely an inference and that other reasonable inferences also existed, we do not find that the prosecutor’s comment in rebuttal was so prejudicial as to require a new trial.
 

 We distinguish this case from
 
 Tindal v. State,
 
 803 So.2d 806 (Fla. 4th DCA 2001). There, without any prompting from the defense, the state in rebuttal suggested that a nontestifying witness identified a person other than the defendant as the shooter because “a gun was pointed at [the witness] and she was in fear.”
 
 Id.
 
 at 809 (emphasis omitted). We found that the state’s argument “implied that the [state] had information which was not presented at trial, suggested that the defendants may be threatening the witness, and was so prejudicial as to require a new trial.”
 
 Id.
 
 at 810. Here, in contrast, the defendant was the first to suggest a reason as to why his cousin refused to talk to the police. The state’s rebuttal argument, which suggested an alternative reason for the cousin’s refusal to talk to the police, should have been expressed more artfully as another reasonable inference. However, we find that the state’s inartful argument was not so prejudicial as to require a new trial in this case. Thus, we affirm on this issue.
 

 Our review of the trial court’s denial of the motion for new trial based on newly discovered evidence normally would be for an abuse of discretion.
 
 See Aguirre-Jarquin v. State,
 
 9 So.3d 593, 603 (Fla.2009) (“The appropriate standard of review when reviewing a trial court order on a motion for new trial based on newly discovered evidence is abuse of discretion.”). However, in this appeal, the defendant no longer relies on his investigator’s affidavit to establish newly discovered evidence pursuant to Florida Rule of Criminal Procedure 3.600(a)(3). Instead, the defendant now is relying on the affidavit to establish prose-cutorial misconduct pursuant to Florida Rule of Criminal Procedure 3.600(b)(5)
 
 *610
 
 (2008) and
 
 Giglio v. United States,
 
 405 U.S. 150, 92 S.Ct. 768, 31 L.Ed.2d 104 (1972).
 

 We agree with the state that the defendant failed to preserve this argument for appeal. The motion for new trial did not allege prosecutorial misconduct or cite rule 3.600(b)(5) or
 
 Giglio. Cf Harrell v.
 
 State, 894 So.2d 935, 940-41 (Fla.2005) (defendant failed to preserve his Florida Rule of Criminal Procedure 3.172(f) argument for appeal because his motion did not invoke that rule).
 

 However, on a recent review of an alleged
 
 Giglio
 
 violation, our supreme court acknowledged that a “ ‘conviction obtained by the knowing use of perjured testimony is
 
 fundamentally
 
 unfair ... [for it] involve[s] a corruption of the truth-seeking function of the trial process.’ ”
 
 Johnson v. State,
 
 44 So.3d 51, 53 (Fla.2010) (quoting
 
 United States v. Agurs,
 
 427 U.S. 97, 103-04, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976) (emphasis added)). We interpret that statement to mean that a
 
 Giglio
 
 violation can constitute fundamental error which may be raised on appeal even if not properly preserved.
 
 See Murray v. State,
 
 3 So.3d 1108, 1122 n. 7 (Fla.2009) (“If an issue is not properly preserved for appeal, then it must ‘be so prejudicial as to constitute fundamental error’ in order to warrant a new trial.”) (citation omitted);
 
 Caraballo v. State,
 
 39 So.3d 1234, 1249 (Fla.2010) (“Fundamental error is that which ‘reaches down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error.’ ”) (citation omitted).
 
 But see Stewart v. State,
 
 861 So.2d 110, 111 (Fla. 3d DCA 2003) (defendant’s claim that the state knowingly offered false testimony at trial in violation of
 
 Giglio
 
 “was never raised in the trial court and is not, in our view, fundamental error”).
 

 Thus, we are compelled to determine whether the record conclusively refutes the alleged
 
 Giglio
 
 violation. We find that it is does not. As our supreme court held in
 
 Johnson:
 

 To establish a
 
 Giglio
 
 violation, a defendant must show the following: (1) the prosecutor presented false testimony; (2) the prosecutor knew the testimony was false; and (3) the false evidence was material. Once the first two prongs are established, the State bears the burden of showing that the false evidence was immaterial by showing that its use was harmless beyond a reasonable doubt. To do this, the State must show that there is no reasonable possibility that the error contributed to the conviction. A court’s decision with respect to a
 
 Gig-lio
 
 claim is a mixed question of law and fact, and a reviewing court will defer to the lower court’s factual findings if they are supported by competent, substantial evidence, but will review the court’s application of law to facts de novo.
 

 Johnson,
 
 44 So.3d at 64-65 (internal citations and quotations omitted). Further, if a police officer knowingly testifies falsely, that knowledge is imputed to the prosecutor who tries the ease.
 
 See Guzman v. State,
 
 868 So.2d 498, 505 (Fla.2003) (“The knowledge prong is satisfied because the knowledge of the detective ... is imputed to the prosecutor who tried the case.”).
 

 Here, the defense investigator’s affidavit provided prima facie allegations that the detective who checked on the DNA samples may have knowingly testified falsely. Although the affidavit was based on hearsay which the DNA lab personnel allegedly provided to the investigator, the affidavit was not so inherently incredible or obviously immaterial to the verdict that the trial court should have summarily denied the motion.
 
 See Robinson v. State,
 
 736
 
 *611
 
 So.2d 93, 93 (Fla. 4th DCA 1999) (“[W]e cannot conclude that [the witness’s] affidavit was inherently incredible or that his trial testimony was obviously immaterial to the verdict, so as to allow the trial court to reject his recantation without holding an evidentiary hearing.”). Rather, the affidavit should have prompted the trial court to hold an evidentiary hearing because: (1) the defendant’s investigator was not a lay witness; (2) the DNA lab personnel whom the investigator identified are employed by the state; and (3) during trial, the defendant impeached the woman who identified him as the person who shot the victim. Thus, we remand for an evidentiary hearing on the motion for new trial.
 

 We caution that our holding should not be construed to mean that every motion for new trial alleging a
 
 Giglio
 
 violation automatically warrants an evidentiary hearing.
 
 See
 
 Fla. R. Crim. P. 3.600(c) (2008) (“When a motion for new trial calls for a decision on any question of fact, the court may consider evidence on the motion
 
 by affidavit or otherwise.”)
 
 (emphasis added);
 
 Dennis v. State,
 
 51 So.3d 456 (Fla.2010) (recognizing that a trial court has the discretion to conduct an evidentiary hearing on a motion to dismiss alleging prosecutorial misconduct);
 
 Johnson v. Singletary,
 
 647 So.2d 106, 111 (Fla.1994) (“We caution that our holding should not be construed to mean that convicted felons are automatically entitled to an evidentiary hearing upon obtaining an affidavit that another person has confessed to committing the crime. Such rulings must be made on a case-by-case basis.”). In this case, we believe that an evidentiary hearing would be appropriate to allow the defendant the opportunity to establish that the state knowingly presented false testimony and, if established, to allow the state to show that its use of the testimony was harmless beyond a reasonable doubt.
 

 Affirmed in part; remanded for eviden-tiary hearing on the motion for new trial.
 

 MAY and DAMOORGIAN, JJ., concur.