# Third District Court of Appeal

## State of Florida

Opinion filed April 11, 2018.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D16-625
Lower Tribunal No. 13-4750C

_____

**Kenny Tennyson,**
Appellant,

vs.

**The State of Florida,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Victoria R. Brennan, Judge.

David S. Molansky, for appellant.

Pamela Jo Bondi, Attorney General, and Jonathan Tanoos, Assistant Attorney General, for appellee.

Before SALTER, EMAS and FERNANDEZ, JJ.

FERNANDEZ, J.

Kenny Tennyson appeals his first degree murder, armed robbery, and conspiracy to commit armed robbery conviction and sentence, asserting that the trial court abused its discretion in denying defense counsel's request to impeach state witness Frank Reinstrom on recross examination. We find that the trial court did not abuse its discretion in its denial of recross as 1) the denial of impeachment was proper considering the basis for impeachment proffered by defense counsel, 2) the alleged Giglio violation was not properly preserved, and 3) there is no fundamental error. Accordingly, we affirm Tennyson's conviction and sentence, without prejudice to his right to file a post-conviction motion raising issues properly cognizable in such a motion.

## I. BACKGROUND

Tennyson, along with codefendants Irvell Jenkins, Nathaniel Woodard, and Frank Reinstrom, was indicted on charges of first degree murder, armed robbery, and conspiracy to commit armed robbery.[1] Tennyson was tried jointly with Woodard and found guilty as changed. The trial court sentenced Tennyson to life without parole on the first degree murder and armed robbery convictions and fifteen years on the conspiracy conviction. Reinstrom testified against Tennyson and Woodard and received a reduced sentence as a result of a plea agreement.

---

[1] This Court previously affirmed the conviction of codefendant Irvell Jenkins in Case No. 3D14-214. Codefendant Nathaniel Woodard filed a separate appeal that is pending review before this Court as of the time of this opinion in Case No. 3D16-779.

Tennyson appeals his conviction, claiming that the trial court erroneously denied his request to recross Reinstrom.

On December 23, 2012, Ernesto Lopez was shot in front of a relative's home in the presence of his daughter and his brother-in-law. A white four door car pulled up, two men exited the vehicle from the passenger's side, stated that it was a robbery, and one of the men shot Lopez. The driver remained in the vehicle. After shooting Lopez, the men stole a gold chain from around Lopez's neck. Lopez passed away on January 15, 2013.

The victim's daughter, Natalie Lopez, and his brother-in-law, Genaro Guzman, were able to provide basic descriptions of the two men that exited the vehicle. The man holding the firearm who said "this is a robbery" in Spanish was described as an African American male in his early twenties with dreadlocks. The other man was described as a white or a lighter skinned male. Natalie testified that even though she could not see the driver of the white sedan, she assumed that there was a driver since the men who attacked her father exited out of passenger doors. During a photographic lineup of suspects, Natalie was able to identify Irvell Jenkins as the man with the firearm who shot her father. She was unable to identify any other suspects.

During the course of the investigation, Detective Fernando Bosch received a tip that led him to question Reinstrom concerning his involvement in the homicide.

Reinstrom agreed to accompany the detective to the police department, where officers interrogated Reinstrom and informed him that he had been identified by the victim's daughter and that his involvement in the homicide was caught on video by a City of Miami camera. The officers then stepped out of the interview room to take a break. While alone in the room, Reinstrom received a call on his cellphone. Reinstrom's portion of the conversation was recorded as follows:

> 'Yo, what's good? Nigga still in this shit, man. Nawh, man, man somebody caught us, caught me on camera, man. Yeah, man with that shit man, I'mma call you back. 'Yo, huh. They got it right, they got a right hoodie they 'bout to show they, they 'bout to show I'm over here clearing my face. Yeah, they (inaudible), they got the address, they ah…yeah I'm finna ah…huh? Yeah, man they already know man the girl daughter pointed my face out. Yeah, man.

Though initially uncooperative, Reinstrom admitted that he was involved in the homicide as a driver of a secondary vehicle and agreed to show the officers the scene of the crime, the location where the white sedan was stolen, and the location where the vehicle was later abandoned after the shooting. He further identified Tennyson and Woodard as the individuals who were directly involved in the homicide.

Reinstrom was ultimately arrested and charged with first degree murder, armed robbery, and accessory after the fact. He pled guilty, pursuant to a written agreement, to accessory after the fact, was sentenced to a seventeen-year split

4

sentence consisting of ten years of prison followed by seven years of probation, and agreed to testify truthfully against Tennyson and Woodard at the joint trial.

During trial, at the conclusion of Reinstrom's testimony on redirect examination, defense counsel for Woodard requested to recross examine Reinstrom for the purpose of impeachment. Defense counsel drew the trial court's attention to Reinstrom's initial denial of the phone call during the police interview but admitted that Reinstrom later agreed that he received the phone call, when questioned on redirect. Defense counsel also argued that Reinstrom's testimony did not agree with certain content from the phone conversation. Specifically, the transcript reads:

> **Defense Counsel:** Judge, my inquiry regarding the content of it involve – involving response, *he initially said it didn't happen. And then he later said it happened but was not in agreement with content.* On redirect, she – there was further testimony were he explained that *he had switched phones* with someone and that the person who – *he identified the caller* and further discussed the content.
> Because of his denial, it's central to our defense that we be permitted to impeach him in this area. So for this purpose, I am seeking because he has first denied and then agreed to some part of it on redirect, I'm asking that the jury actually hear the audio.
> **The Court:** To impeach his denial that it happened?
> **Defense Counsel:** Yes.

(Emphasis added). The relevant testimony from cross and redirect examination is provided as follows:

<u>Cross Examination</u>

5

**Defense Counsel:** There's a moment when in that interview room part of their -- the pressure that they put on you, they exit that room and leave you to stew, correct?

**Reinstrom:** Yes, sir.

**Defense Counsel:** And at that moment you made a phone call.

**Reinstrom:** No, sir.

**Defense Counsel:** And you tell me if this is true. Did you say: "They got it right, yeah, man, they know, man, the girl daughter pointed my face out"? This is the phone call. This is the discussion on the phone call you made during a break in the interview, correct?

**State:** Objection, move to strike. Calls for hearsay.

**The Court:** Overruled.

**Reinstrom:** No, sir, that wasn't what was said.

…

**Defense Counsel:** And you make a phone call that says: They caught me on camera. They got it right. They got a right hoodie they about to show. Yeah, I'm fittin' to -- yeah, man, they already know, man. The girl daughter pointed my face out. You remember making a discussion on your phone when no detectives are present in interview room?

**Reinstrom:** No, sir.

**Defense Counsel:** You don't remember this?

**Reinstrom:** No, sir.[2]

Redirect Examination

**State:** So you -- Mr. Miller was asking you about a phone you had. You had a phone, didn't you?

**Reinstrom:** The day I got arrested, ma'am?

**State:** Yes.

**Reinstrom:** Yes, I had it.

**State:** Whose phone was it?

**Reinstrom:** Jamel, ma'am.

**State:** Who were you on the phone with in the homicide bureau? Who were you calling?

**Reinstrom:** I ain't calling nobody ma'am.

**State:** Who called you?

---

[2] During cross examination, defense counsel did not seek to impeach Reinstrom for his testimony initially denying the phone call, denying the content of the phone call, and later, affirming that he did not remember that the phone call took place.

**Reinstrom:** One of them. I can't remember which one, ma'am.
**State:** When you say one of them, who are you talking about?
**Reinstrom:** My codefendants.
**State:** Was it Jamel calling?
**Reinstrom:** I ain't sure.
**State:** But you know someone called you. And whose phone did they have that they were calling you from?
**Reinstrom:** It was probably – it was my phone.
**State:** Why did you guys switch phones?
**Reinstrom:** Because his phone was dying and he was leaving the house.
**State:** So whoever – who was leaving the house?
**Reinstrom:** Jamel, ma'am.
**State:** So is that who called you?
**Reinstrom:** If I'm not mistaken, yes, ma'am.[3]

Defense counsel provided the trial court with the transcript of Reinstrom's interview with police, pointed out where in the transcript Reinstrom received a phone call during the interview, and requested that the trial court allow the jury to listen to the entire audio recording of the interview on recross in order to impeach Reinstrom.

The State responded that there was no new content brought up within the scope of redirect. The State acknowledged that Reinstrom did indeed testify that he did not *place* a phone call, but after clarification, Reinstrom agreed that he did *receive* a phone call during the interview. Regarding the content of the phone call, the State answered, "And that issue about whether what he said in the phone call is not new within the scope of redirect."

_____

[3] The State did not directly question Reinstrom regarding the content of the phone call or his denial of the content of the phone call during cross examination.

7

The trial judge denied defense counsel's request to recross Reinstrom, finding, "He clearly testified in redirect that he had a phone with him and that someone called him and that there was nothing critical about that." The trial proceeded, and Tennyson was convicted and sentenced. Tennyson's appeal followed.

## II. ANALYSIS

On appeal, Tennyson claims that the trial court erroneously denied his request to recross Reinstrom based on two theories: 1) the trial court improperly restricted further impeachment of Reinstrom's credibility and 2) the trial court violated Tennyson's right to due process under Giglio v. United States, 405 U.S. 150 (1972). For the reasons stated below, we affirm Tennyson's conviction and sentence.

### A. Standard of Review

"A trial court's decision not to allow re-cross-examination is reviewed for abuse of discretion." Knight v. State, 919 So. 2d 628, 636 (Fla. 3d DCA 2006). It is not an abuse of discretion for a trial court to deny recross when the prosecutor does not raise any new matters during redirect. See Hurst v. State, 825 So. 2d 517, 517 (Fla. 4th DCA 2002). "The admission or rejection of [evidence for the purpose of impeachment] rests in the sound discretion of the trial court who must judge the propriety thereof from what transpires upon the trial, and the conduct of the

witness upon the stand. And this discretion will not be interfered with unless abused." Carter v. State, 101 So. 2d 911, 914 (Fla. 1st DCA 1958). "This Court applies a mixed standard of review to Giglio claims, 'defer[ring] to the factual findings made by the trial court to the extent they are supported by competent, substantial evidence, but review[ing] de novo the application of [the law to the facts].'" Suggs v. State, 923 So. 2d 419, 426 (Fla. 2005) (quoting Sochor v. State, 883 So. 2d 766, 785 (Fla. 2004)).

### B. Impeachment

On appeal, Tennyson abandons the basis for impeachment proffered by defense counsel. At trial, defense counsel sought to impeach Reinstrom primarily for his initial denial of the phone call, which was corrected on redirect. As to the context of the phone call, defense counsel only referenced Reinstrom's testimony on redirect regarding "switching phones with someone" and "identif[ying] the caller." The trial court sought to clarify the reason for impeachment by asking, "To impeach his denial that [the phone call] happened?" Defense counsel answered in the affirmative and asked for the entire audio of the police interview to be played for the jury.

On appeal, Tennyson now argues that defense counsel should have been permitted to impeach Reinstrom with a specific statement from the audio recording in which, during the phone call, Reinstrom acknowledged that the victim's

daughter had identified him at the scene of the shooting. Tennyson contends that this statement is contrary to Reinstrom's testimony during cross where he denied the content of the phone call, including acknowledging the daughter's identification. Tennyson also contends that the statement is also contrary to Reinstrom's testimony on redirect where he denied being present at the scene of the shooting.

Relevant Portion of the Phone Conversation

> They got it right, they got a right hoodie they 'bout to show they, they 'bout to show I'm over here clearing my face. Yeah, they (inaudible), they got the address, they ah…yeah I'm finna ah…huh? Yeah, man they already know man the girl daughter pointed my face out. Yeah, man.

Relevant Testimony on Cross Examination

> **Defense Counsel:** And at that moment you made a phone call.
> **Reinstrom:** No, sir.
> **Defense Counsel:** And you tell me if this is true. Did you say: "They got it right, yeah, man, they know, man, the girl daughter pointed my face out"? This is the phone call. This is the discussion on the phone call you made during a break in the interview, correct?
> **State:** Objection, move to strike. Calls for hearsay.
> **The Court:** Overruled.
> **Reinstrom:** No, sir, that wasn't what was said.

Relevant Testimony on Redirect Examination

> **State:** Were you there when Irvell Jenkins pulled the trigger?
> **Reinstrom:** No, ma'am.
> **State:** Is that why you don't know all the details?
> **Reinstrom:** Yes, ma'am.

The trial judge based her decision to deny recross on the basis for impeachment defense counsel provided at trial, as is indicated by the judge's ruling – "Your request is denied. He clearly testified in redirect that *he had a phone* with him and that *someone called him* and that there was *nothing critical* about that." (Emphasis added). Reinstrom's denial of the portion of the phone call in which he acknowledged the daughter's identification and his denial of being at the scene of the shooting were not included as part of defense counsel's explanation for impeaching Reinstrom. Moreover, it was during defense counsel's cross examination that Reinstrom initially denied the phone call and denied the content of the phone call. Defense counsel had ample opportunity during cross to impeach Reinstrom but failed to do so.

Lastly, Reinstrom's denial on redirect regarding his presence at the scene of the shooting does not contradict his acknowledgment during the phone call that the daughter identified him at the scene. Reinstrom did not have personal knowledge of the substance of the statement. See Roman v. State, 475 So. 2d 1228, 1233 (Fla. 1985); § 90.604, Fla. Stat. (2016). He was merely acknowledging the information the officers confronted him with during the interrogation, and there is no evidence in the record that the daughter actually identified Reinstrom. An impeachment of Reinstrom on this prior inconsistent statement would go to further discredit Reinstrom but

11

is not admissible for the truth of the matter asserted – that he was present at the scene when the shooting took place. See generally Pearce v. State, 880 So. 2d 561, 568-72 (Fla. 2004).

Accordingly, we find that there is no indication that the trial court abused its discretion when it denied defense counsel's request for impeachment on recross examination, and any possible error would be harmless.

## C. Giglio Violation

Tennyson argues that "[t]he state allowed Reinstrom's false testimony to go uncorrected contrary to the requirements of Due Process (and contrary to the evidence [in the audio recording]) []" and cites to Giglio v. United States, 405 U.S. 150 (1972). Yet, as the record indicates, the alleged Giglio violation was not properly preserved for appeal, and there was no fundamental error to overcome the lack of preservation in light of Reinstrom's substantial impeachment throughout trial.

A Giglio violation is established by showing: 1) the testimony provided was false, 2) the prosecutor knew the testimony was false, and 3) the false statement was material. Guzman v. State, 941 So. 2d 1045, 1050 (Fla. 2006). A Giglio claim is based on the prosecutor's knowing presentation at trial of false testimony against the defendant. Giglio, 405 U.S. at 154-55. Under Giglio, where the prosecutor

12

knowingly uses perjured testimony, or fails to correct what the prosecutor later learns is false testimony, the false evidence is material "if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." United States v. Agurs, 427 U.S. 97, 103 (1976). Once the first two prongs are established, the State bears the burden of showing that the false evidence was immaterial by showing that its use was harmless beyond a reasonable doubt. Id. To do this, the State must show that "there is no reasonable possibility that the error contributed to the conviction." State v. DiGuilio, 491 So. 2d 1129, 1135 (Fla. 1986).

A Giglio violation has to be properly preserved for review on appeal, unless it is found to be fundamental error. Mackey v. State, 55 So.3d 606, 610 (Fla. 4th DCA 2011). To preserve an issue for review on appeal, a legal argument must be timely raised and ruled on by the trial court and the argument must be sufficiently precise that it fairly apprises the trial court of the relief sought. § 924.051(1)(b)(3), Fla. Stat. (2016).

Defense counsel did not raise a Giglio violation in support of his request for recross examination. Defense counsel briefly brought up alleged false parts of Reinstrom's testimony, the explanation of which was ambiguous. The focus of defense counsel's rationale was on Reinstrom's initial denial of the phone call, which was later corrected on redirect. The Florida Supreme Court has held,

13

"Ambiguous testimony does not constitute false testimony for the purposes of <u>Giglio</u>*." <u>Phillips v. State</u>, 608 So. 2d 778, 781 (Fla. 1992). More importantly, defense counsel did not show that the prosecutor knew the testimony was false; even a mere accusation of such is absent from the record. Therefore, the burden did not shift to the State to prove that the alleged false testimony was immaterial. Accordingly, a <u>Giglio</u> violation was not properly preserved for review on appeal.

## D. Fundamental Error

However, a <u>Giglio</u> violation can be raised on appeal if not properly preserved if that violation constitutes a fundamental error. <u>Mackey</u>, 55 So. 3d at 610. "Fundamental error is that which 'reaches down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error.'" <u>Caraballo v. State</u>, 39 So. 3d 1234, 1249 (Fla. 2010) (quoting <u>Brooks v. State</u>, 762 So. 2d 879, 899 (Fla. 2000)).

Reinstrom's statements made during the phone call were unsworn, hearsay statements that would have been offered for impeachment purposes but not admissible as substantive evidence. In light of Reinstrom's substantial cumulative impeachment throughout his testimony, any error occurring as a result of the trial court's denial of recross examination was not fundamental error. On cross examination alone, Reinstrom's credibility was impeached at least five different times. Reinstrom admitted on the stand to lying multiple times about whether he saw a gun, including a specific instance in November 2013 at the Charlotte Correctional Institute. He admitted to lying about "mostly everything" during the police interview. Specifically, he lied to the officers regarding Nathaniel Woodard's involvement in the shooting. He also affirmed that he took the officers to the wrong location when retracing the routes taken on the day of the shooting. Reinstrom also agreed with defense counsel that if he lies and does not cooperate,

according to the plea agreement, he will receive a sentence of no less than fifteen years. On redirect examination, the State also brought attention to Reinstrom initially lying to police regarding Woodard and Tennyson's involvement in the shooting. As such, there is no fundamental error in this case.

### III. CONCLUSION

We find that the trial court did not abuse its discretion when it denied recross examination of Reinstrom as 1) the denial of impeachment was proper considering the basis for impeachment proffered by defense counsel, 2) the alleged <u>Giglio</u> violation was not properly preserved, and 3) there is no fundamental error. For these reasons, we affirm Tennyson's conviction and sentence.

Affirmed.