DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**BRYAN SCHWARZ,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D2024-0594

[April 16, 2025]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, St. Lucie County; Lawrence M. Mirman, Judge; L.T. Case No. 562022CF001537A.

Olivia M. Goodman and Stephanie A. Fitzsimmons of O'Brien Hatfield, P.A., Tampa, for appellant.

James Uthmeier, Attorney General, Tallahassee, and Heidi L. Bettendorf, Senior Assistant Attorney General, West Palm Beach, for appellee.

FORST, J.

Bryan Schwarz ("Defendant") timely appeals his conviction and sentence after a jury found him guilty of lewd or lascivious molestation of a child under the age of twelve, and the trial court imposed a sentence of life imprisonment. Defendant raises five alleged trial court errors in his appeal and a claim of cumulative error. We affirm Defendant's conviction and sentence on all issues, writing to address three of those issues. We affirm on the remaining issues without discussion.

## Background

### *The Incident*

Defendant was babysitting his two-year-old niece ("the Victim"), and they were seated side-by-side on the living room couch watching television. Defendant's then wife ("Former Wife") briefly left the living room to use the restroom. During Former Wife's absence, Defendant grabbed the Victim's right hand and inserted it down the front of his pants multiple times. The

Victim repeatedly pulled her hand away, prompting Defendant to grab and reinsert her hand into his pants. Defendant ceased this behavior as soon as Former Wife reentered the living room.

The living room was equipped with a Ring camera that recorded the couch from behind, including the incident. Former Wife viewed the footage on her cell phone while in the restroom and then reentered the living room to confront Defendant. Former Wife gave this footage to her brother-in-law (the Victim's father), who in turn provided the footage to police. The police then arrested and interviewed Defendant.

During this recorded interview, Defendant admitted that he repeatedly placed the Victim's hand inside his pants. However, Defendant denied that the Victim's hand made contact with his genital area, though acknowledging the Victim's hand "came close." He demonstrated on himself where he placed the Victim's hand, explaining that the "middle of [his] thigh" was "as far as it got." At multiple points, Defendant expressed that he did not know "what possessed [him] to do it" because he was "not that kind of person." He also stated that he had been "drinking" before the incident.

### Motion in Limine

Defendant moved in limine to exclude the footage, arguing that police obtained it because Former Wife broke the marital privilege. Specifically, Defendant argued that around the time of the incident, he had commented to Former Wife about the home's Ring cameras being "glitchy," which was the reason why Former Wife had checked the Ring cameras. Defendant contended that his protected marital communications with Former Wife were the basis for her to view the footage, and Former Wife broke the privilege when she gave the footage to the Victim's father. The trial court disagreed, ruling the footage could come into evidence, but directing the State to present a "truncated" version to exclude any protected marital communications.

Additionally, Defendant sought to exclude references to the Victim as his niece, arguing these references had no probative value because the familial relationship was not an element of the charged offense. The trial court acknowledged that a familial relationship was not an element, but it ruled the references were relevant to contextualize the babysitting setting.

### Motion for Judgment of Acquittal

The State called Former Wife and the interviewing detective during its case-in-chief and also introduced into evidence the Ring camera footage and recorded interview. After the State rested, Defendant moved for

2

judgment of acquittal ("JOA"), arguing the State had failed to present evidence of intent to commit lewd or lascivious molestation. The trial court denied the motion, reasoning that the State's evidence was sufficient and intent is often inferred from the circumstances.

### *Sentencing*

Following the jury's guilty verdict on the lewd or lascivious molestation of a victim under twelve charge, a licensed psychologist conducted a psychosexual evaluation of Defendant as part of the presentencing investigation. The psychologist authored a report, which the trial court accepted at sentencing. According to the report, Defendant did not meet the criteria for pedophilia and was "below average risk" of sexual recidivism. Defense counsel argued for the lowest sentence under the sentencing statute based on the report, Defendant's repentance, and Defendant's struggles with alcoholism and depression.

The trial court imposed a life sentence in prison, reasoning:

> With regard to deciding the sentence in this case, I start from the beginning with [the psychologist]'s report, which is unrebutted. I've read it and I've digested it, and by law, I must accept it. And I do accept it. Their conclusion is that the act -- very disturbing act, was sexually motivated, but that he's not a pedophile. So I start there.

> But in this case, when I look at the nature of the offense, in particular, the age of the child, two years old, is so grave and so weighty. And then I consider the options before the Court. I do determine that the proper sentence in this case is to sentence him in life in prison.

This appeal timely follows.

## Analysis

### *Motion in Limine*

The appellate court reviews the denial of a motion in limine for an abuse of discretion. *See Mackey v. State*, 55 So. 3d 606, 609 (Fla. 4th DCA 2011).

Defendant argues the trial court should have excluded the Ring camera footage of the incident, because Former Wife violated Florida's marital privilege when she gave the footage to the Victim's father. We disagree, because this privilege imposes limitations on one spouse's ability to *testify* against the other spouse regarding marital communications and does not

extend so far as to require exclusion of evidence stemming from such communications. *See State v. Grady*, 811 So. 2d 829, 833 (Fla. 2d DCA 2002) ("We reject [the wife]'s argument and conclude that although the husband-wife privilege may apply to exclude testimony as to confidential marital communications, the privilege does not require suppression of admissible evidence gathered through law enforcement's investigation of her, and it does not bar her criminal prosecution."); *see also Kerlin v. State*, 352 So. 2d 45, 52 (Fla. 1977) (discussing how the privilege is narrowly construed and does not cover one spouse's observations of the other spouse's criminal actions).

We also find the trial court did not abuse its discretion when it allowed the State to refer to the Victim as Defendant's niece, because these references provided the backdrop for the babysitting context in which the incident occurred. *See King v. State*, 89 So. 3d 209, 227 (Fla. 2012) ("Evidence, not part of the crime charged but pertaining to the chain of events explaining the context, motive and set-up of the crime, is properly admitted if . . . necessary to complete the story of the crime for the jury." (quoting *United States v. Williford*, 764 F.2d 1493, 1499 (11th Cir. 1985))).

### *Motion for Judgment of Acquittal*

The trial court's denial of a motion for JOA is reviewed de novo. *McCaw v. State*, 395 So. 3d 1065, 1068 (Fla. 4th DCA 2024).

Contrary to Defendant's argument, the trial court properly denied his JOA motion because the evidence was legally sufficient to sustain his conviction under sections 800.04(5)(a) and (b), Florida Statutes (2021).[1] Here, it is undisputed that Defendant was eighteen or older, and the Victim was under twelve. Additionally, the camera footage shows the Defendant repeatedly placing the Victim's right hand down the front of his pants. Each time the Victim pulls her hand away, the Defendant grabs it and reinserts it back into his pants. Moreover, during the interview with the detective, Defendant admitted he had engaged in this conduct—expressing that the Victim's hand "came close" to his genital area and he did not know "what possessed [him] to do it" because he was "not that kind of person." *See Giroux v. State*, 955 So. 2d 656, 656 (Fla. 4th DCA 2007); *White v. State*, 392 So. 3d 1123, 1124 (Fla. 1st DCA 2024).

---

[1] "A person who intentionally touches in a lewd or lascivious manner the breasts, genitals, genital area, or buttocks, or the clothing covering them, of a person less than 16 years of age, or forces or entices a person under 16 years of age to so touch the perpetrator, commits lewd or lascivious molestation." § 800.04(5)(a), Fla. Stat. (2021). A lewd or lascivious molestation violation is a life felony when the offender is eighteen or older and the victim is less than twelve. § 800.04(5)(b), Fla. Stat. (2021).

*Sentencing*

Defendant argues the trial court erred in relying on an impermissible sentencing factor, when it double-counted the factor of the Victim's age prior to imposing a life imprisonment sentence, because the Victim's age was an element of the charged offense. Defendant lodged no objection below, so we review for fundamental error. *See Bailes v. State*, 382 So. 3d 1, 4 (Fla. 4th DCA 2024).

A concern about "double-counting" is implicated when a "double-counted" factor is used to justify a departure sentence, which did not occur here. *See Adorno v. State*, 75 So. 3d 850, 852 (Fla. 2d DCA 2011) ("[S]ince age, in and of itself, has already been factored into the presumptive sentence for these offenses and since a departure sentence cannot be based on factors already accounted for by the guidelines, *see Hendrix v. State*, 475 So. 2d 1218, 1220 (Fla. 1985), the State must prove some particular vulnerability, arising out of the victim's age—not just age itself."); *see also Capers v. State*, 678 So. 2d 330, 333 (Fla. 1996) ("[The appellant] also argues the double counting of an element of a crime as an aggravating circumstance violates constitutional principles. We find no merit to this claim. As we stated in *State v. Smith,* 'the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended.'" (quoting 547 So. 2d 613, 614 (Fla. 1989))).

Here, the trial court imposed a lawful sentence of life imprisonment pursuant to the Florida legislature's expressed sentencing options for a violation of section 800.04(5)(b)—a life felony. Thus, no sentencing error occurred. *See Prentice v. State*, 319 So. 3d 57, 60 (Fla. 4th DCA 2021) (explaining the two sentencing options for a section 800.04(5)(b) violation are "a term of imprisonment for life" or a "split sentence" of at least a 25-year imprisonment term followed by probation or community control for the remainder of the offender's life (citing § 775.082(3)(a)4.a., Fla. Stat. (2016)); *Alfonso-Roche v. State*, 199 So. 3d 941, 946 (Fla. 4th DCA 2016) ("[C]urrent Florida law gives a sentencing judge unlimited discretion to sentence a defendant up to the maximum term set by the legislature for a particular crime.") (Gross, J., concurring specially)).

## Conclusion

For the foregoing reasons, we affirm Defendant's conviction for lewd or lascivious molestation of a child under the age of twelve, and his sentence to life imprisonment.

*Affirmed.*

KLINGENSMITH, C.J., and WARNER, J., concur.

*    *    *

**Not final until disposition of timely filed motion for rehearing.**